UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MELVIN ANDREWS, ET AL.

VERSUS

NEXION HEALTH MANAGEMENT, INC. ET AL.

CIVIL ACTION

NO. 24-560-JWD-RLB

**RULING AND ORDER**

This matter comes before the Court on the *12(b)(6) Motion to Dismiss* ("*Motion to Dismiss*") (Doc. 4) filed by defendants Nexion Health Management, Inc. ("Nexion Management") and Nexion Health at Minden, Inc. d/b/a Meadowview Health & Rehab Center ("Meadowview") (collectively "Defendants"). Plaintiffs Melvin Andrews, Monique King, Felix Rice, Jr., and Patricia Rice ("Plaintiffs"), survivors of Felix Rice, oppose the motion (Doc. 12). Defendants have filed a reply. (Doc. 15.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is denied.

**I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

The following factual allegations are primarily taken from the *Petition for Damages*, (Doc. 1-1 at 5–24). The well-pled allegations are assumed to be true for purposes of this motion. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

Felix Rice ("Mr. Rice"), the father of Plaintiffs, was a resident at Meadowview nursing home from February 13, 2020, until his death on July 28, 2023. (Doc. 1-1 at 6.) During this time, "Mr. Rice had self-care deficits and conditions which made him at greater risk of developing pressure injuries and infections." (*Id.*) "As of the time of Mr. Rice's readmission to the facility on

or about June 1, 2022, Mr. Rice was completely free of pressure injuries to his body." (*Id.*) After this, Mr. Rice began to suffer injuries due to the lack of sufficient numbers of nursing staff. (*Id.*) These injuries included "avoidable pressure injuries to his sacrum and right heel . . . ." (*Id.*) Mr. Rice developed an infected pressure injury and additional pressure injuries to his lower extremities. (*Id.*)

Shortly before his death, Mr. Rice was hospitalized for an altered mental status, where he was diagnosed with

> the aforementioned unstageable pressure injury to his sacrum, as well as sepsis potentially related to his infected sacral ulcer, multiple pressure injuries to his feet and lower extremities, and other conditions including septic shock, left lower lobe pneumonia, metabolic encephalopathy, and acute kidney injury, all of which he developed while a resident at the facility.

(*Id.*) Plaintiffs claim that these injuries caused Mr. Rice's death and were a result of Defendants' actions. (*Id.* at 7.)

First, Plaintiffs assert an administrative negligence claim against Nexion Management only. (*Id.*) Nexion Management managed the Meadowview nursing home, and "had operational/managerial control over the facility's resources, funding and staffing levels . . . ." (*Id.*) Plaintiffs claim that Nexion Management breached its duty to sufficiently staff the nursing home by intentionally underfunding the facility. (*Id.* at 7–9.) This breach resulted in Mr. Rice's preventable injuries. (*Id.* at 10–11.)

Plaintiffs also assert an intentional fraud claim against both Defendants. (*Id.* at 14.) Plaintiffs claim that Defendants intentionally misrepresented their compliance with Louisiana nursing home standards and minimum nursing requirements to induce Mr. Rice to become a resident at Meadowview. (*Id.* at 14–16.) Mr. Rice "was unsophisticated and unknowledgeable in the operation of skilled nursing facilities in the State of Louisiana . . . [,]" and could not have

2

learned of the understaffing because he was "extremely vulnerable." (*Id.* at 16.) If Mr. Rice and his legal representative had known of the improper operation of the facility, Mr. Rice would not have become a resident. (*Id.*) This caused him "pecuniary harm by being deprived of the value of payments made for skilled nursing services when these services were not actually rendered consistent with [Defendants'] representations." (*Id.* at 18.)

Plaintiffs filed suit in 19th Judicial District Court for the Parish of East Baton Rouge, and Defendants removed to this Court on July 11, 2024. (*Id.* at 1.)

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *In re Great Lakes*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *MySpace*, 528 F.3d at 418). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' " *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H.*

*Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.' " *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].' " *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

4

**III.  DISCUSSION**

This case is before the Court on diversity jurisdiction. (Doc. 1 at 1.) "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992)). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.' " *Id*. (quoting *Transcontinental Gas*, 953 F.2d at 988). Thus, "[o]ur task is to determine as best we can how the Louisiana Supreme Court would decide it." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (cleaned up).

**A.  Medical Review Panel Requirement**

**i.  Parties' Arguments**

Defendants argue that, because they are qualified healthcare providers, Plaintiffs' claims against them are premature, as the case has not been submitted to a medical review panel. (Doc. 4-1 at 4.) Therefore, they urge the Court to dismiss this case to allow it to be submitted to a medical review panel pursuant to the Louisiana Medical Malpractice Act ("LMMA"). (*Id.*) Plaintiffs assert that they were not required to submit the case to a medical review panel because Nexion Management—the only defendant on the administrative negligence claim—has not shown that it is a qualified healthcare provider, and the intentional fraud claim falls within an exception to the LMMA medical review panel requirement. (Doc. 12 at 9, 13.)

5

### ii. Law and Analysis

#### 1. Administrative Negligence

On November 19, 2024, Plaintiffs notified the Court of updated authority on this issue, the ruling on the motion to dismiss in *Lunkin v. Nexion Health Management*, No. 24-673, 2024 WL 5317288 (M.D. La. Nov. 19, 2024) (Jackson, J.). (Doc. 22.) In *Lunkin*, which is also an administrative negligence and fraud case, Nexion Management asserted the same arguments it asserts here—that it is a qualified healthcare provider, and the plaintiff was required to go before a medical review panel. *Lunkin*, 2024 WL 5317288, at *2. The LMMA requires that "a medical malpractice claim against a 'private qualified health care provider' must be dismissed as premature 'if such claim has not first been presented to a medical review panel.' " *Id.*

The Court found that, although Nexion Management had submitted evidence of being registered as a qualified healthcare provider, the certificate only showed that Nexion Management was a qualified healthcare provider between April 1, 2023, to June 1, 2024. *Id.* The plaintiff had begun her stay at the nursing facility in February 2023. *Id.* The Court applied the principles of continuing tort, finding that the plaintiff had pled a continuing tort, as she pled that the injury was caused by "underfunding, under-resourcing, and understaffing from the day [the plaintiff] arrived to the end of her stay." *Id.* The Court held that

> the continuing tort doctrine protects Plaintiff from the procedural requirements of the LMMA, which can only be invoked by Nexion for part of the tortious period. For this reason, the Court finds that the LMMA does not protect Nexion from Plaintiff's claim against it for a tort that began before Nexion was certified under the LMMA. *See* [*Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La. 1992)] ("[T]he coverage of the [LMMA] should be strictly construed.")

*Id.* at *3.

The same is true here. Nexion Management attached a copy of its certification of enrollment as a certified healthcare provider, but it only shows enrollment for the period between

6

June 1, 2023, and June 1, 2024. (Doc. 4-2 at 1.) Mr. Rice's stay at Meadowview began in February 2020 and ended in July 2023. (Doc. 1-1 at 6.) Plaintiffs pled that throughout his time at Meadowview, Mr. Rice suffered because of the intentional underfunding, which led to understaffing. (*Id.* at 9.) This well pled allegation, taken as true for the purposes of the *Motion to Dismiss*, establishes that the administrative negligence of Nexion Management was a continuing tort. The injury was perpetuated "through overt, persistent, and ongoing acts[,]" which Plaintiffs sufficiently allege. *Lunkin*, 2024 WL 5317288, at *3 (quoting *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013)) (internal quotation marks omitted).

Because the tort began when Mr. Rice began his stay at Meadowview in February 2020—or at least when he returned to Meadowview in June 2022—part of the tort occurred when Nexion Management was not a qualified healthcare provider. Nexion Management had the burden to show that it was a qualified healthcare provider during the relevant period, and it has failed to do so. *Prejean v. Rodrigue*, 23-646 (La. App. 1 Cir. 12/27/23), 381 So.3d 98, 107 ("As the party filing the exception, the burden was on [the defendant] to prove prematurity and initial immunity from suit as a qualified health care provider under the [L]MMA."). As this Court held in *Lunkin*, Plaintiffs are protected from the procedural bar requiring a medical review panel, because the tort began when Nexion Management was not a qualified healthcare provider and did not fall under the LMMA. *Lunkin*, 2024 WL 5317288, at *3. The Court need not address the rest of Nexion Management's arguments that the claim is premature, since they rely on Nexion Management's status as a qualified healthcare provider. The *Motion to Dismiss* will be denied as to Plaintiffs' administrative negligence claim.

7

### 2. Fraud

Plaintiffs allege that Defendants committed both delictual (tort) and contractual fraud. (Doc. 1-1 at 23.)

The LMMA requires that a medical malpractice claim against a qualified healthcare provider go before a medical review panel before suit is filed. La. R.S. § 40:1231.8. Although Nexion Management was not considered to be a qualified healthcare provider during the relevant period, Plaintiffs do not dispute Meadowview's status as a qualified healthcare provider. (Doc. 12 at 11.) In a case similar to this one, the Louisiana Third Circuit Court of Appeal addressed whether fraud claims of this sort are subject to the LMMA. *Riley v. Paramount Healthcare Consultants, LLC*, 24-127 (La. App. 3 Cir. 10/30/24), 396 So.3d 470.

> In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, the [S]upreme [C]ourt identified six factors to be utilized in determining whether an action sounds in medical malpractice: (1) whether the specific wrong is treatment related or caused by a failure of professional skill; (2) whether the specific wrong will require expert medical evidence to determine if the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship or was within the scope of activities that a hospital is licensed to perform; (5) whether the injury would have occurred if the patient did not seek treatment; (6) whether the alleged tort was intentional.

*Id.* at 476.

The court in *Riley* focused on factor six, "whether there is an allegation of an intentional tort." *Id.* Intentional torts are excluded from the definition of malpractice under the LMMA, and thus are not required to go before the medical review panel. *Id.* In *Riley*, the plaintiffs alleged that the nursing home made intentional misrepresentations that the facility would be sufficiently staffed pursuant to the Nursing Home Residents Bill of Rights ("NHRBR"), Louisiana Revised Statutes § 40:2010.8. *Id.* The court examined the three elements of contractual fraud:

8

> (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.

*Id.* at 477 (quoting *Shelton v. Standard/700 Assocs.*, 01-587, p. 5 (La. 10/16/01), 798 So.2d 60, 64) (internal quotation marks omitted). "Specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great." *Id.* (quoting *Lomont v. Bennett*, 14-2483, p. 19 (La. 6/30/15), 172 So.3d 620, 634, *cert. denied*, 577 U.S. 1139 (2016)) (internal quotation marks omitted). The elements of delictual fraud mirror those of contractual fraud: "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

To fall under the intentional tort exception to the LMMA, "the petition must contain specific facts sufficient to establish the medical provider consciously desired the physical result of his acts or knew the result was substantially certain to follow from [its] conduct." *Riley*, 396 So.3d. at 477–48 (quoting *Doe v. Banks*, 23-914, p. 7 (La. App. 1 Cir. 3/13/24), 385 So.3d 706, 710-11). Plaintiffs have alleged that Defendants knew about the duties owed Mr. Rice under the NHRBR, as a representative of Defendants provided a copy of his rights under the NHRBR. (Doc. 1-1 at 15.)

> Pursuant to this uniform written representation to Mr. Rice and his sponsor that the services provided by the DEFENDANTS would meet the particularized standards as set forth in La. R.S. 40:2010.8(A), the DEFENDANTS were to provide Mr. Rice services consistent with the mandatory requirements of La. R.S. 40:2010.8(A)(7), most specifically the right to live in a facility that employs "sufficient nursing staff to provide ... services that meet the needs of each resident" as mandated by law, including, without limitation, and, as alleged herein, specifically sufficient "nursing service personnel" which is the sole focus of this cause of action, and DEFENDANTS affirmatively represented to Mr. Rice that they would provide such services. These uniform representations of the DEFENDANTS in the admission

9

process as to the nature of their services to be provided were false and actually known to be false when made by the DEFENDANTS.

(*Id.*) While Plaintiffs do not clearly claim that Defendants intended to injure Mr. Rice or knew to a substantial certainty that injury would follow from their actions, it has been sufficiently implied in the *Petition* that Defendants made this misrepresentation intending to cause pecuniary harm. (*Id.* at 16–17.) It is likely that, through discovery, facts supporting this inference will be discovered. However, Plaintiffs have alleged " 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [Defendants' intent or substantial certainty].' " *Calhoun*, 855 F. App'x at 919–20 (quoting *Twombly*, 550 U.S. at 556). Thus, Plaintiffs have adequately pled that there was intentional misrepresentation, made with the intent to deceive Mr. Rice.

Plaintiffs have alleged that Mr. Rice and his legal representative relied on these representations by Defendants when deciding to become a resident at Meadowview. (*Id.* at 15–16.) Further, Plaintiffs allege that Defendants misrepresented their compliance with the NHRBR with the intent "to deceive Mr. Rice into believing that the facility was properly operated to induce Mr. Rice into becoming a resident of the facility." (*Id.* at 16.) Plaintiffs allege that Mr. Rice's decision to become a resident resulted in pecuniary harm in the form of payments for inadequate staffing, and physical harm as explained in the administrative negligence claim. (*Id.* at 18.) Thus, Plaintiffs have adequately pled that Mr. Rice justifiably relied on the misrepresentations by Defendants. Therefore, the Court finds that Plaintiffs have adequately pled an intentional tort, and the intentional fraud claim is not subject to the LMMA medical review panel requirement. The *Motion to Dismiss* will be denied on this ground.

### B. NHRBR Claim

Defendants argue that Plaintiffs cannot assert a claim for damages under the NHRBR, because the NHRBR only provides for injunctive relief for current residents. (Doc. 4-1 at 11.)

Plaintiffs say that they are not seeking damages pursuant to NHRBR, and only use it to establish the duties owed to Mr. Rice that Defendants fraudulently represented were being followed in the facility. (Doc. 12 at 20–21.) Defendants reply, saying that the fraud claim is actually a claim under the NHRBR because it asserts the breach of the duties outlined there. (Doc. 15 at 6.)

*Lunkin* addressed this issue and rejected Defendants' argument. 2024 WL 5317288, at *4. The Court looked to the plaintiff's citation to 42 C.F.R. § 483.5, which also sets forth regulations regarding mandatory standards in nursing homes. *Id.* The Court found that the NHRBR bar to damages did not apply because the plaintiff based her claim on the misrepresentation of compliance with 42 C.F.R. § 483.5. The same is true here. Plaintiffs refer to 42 C.F.R. § 483.35, saying that Defendants misrepresented their compliance with this regulation. (Doc. 1-1 at 15.) Therefore, as the Court held in *Lunkin*, Plaintiffs' fraud claim is not foreclosed, "in so far as they allege a misrepresentation of compliance with [§ 483.35]." 2024 WL 5317288, at *5. The *Motion to Dismiss* will be denied on this ground

### C. Rule 9(b) Pleading Requirements

#### i. Parties' Arguments

Defendants make a brief argument that Plaintiffs have failed to meet the heightened pleading requirement for fraud claims pursuant to Federal Rule of Civil Procedure 9(b). (Doc. 4-1 at 12.) They say "Plaintiffs assert throughout their Petition that Nexion Management made false representations. However, Plaintiffs fail to specify how these representations were false, and only vaguely allege that Meadowview concealed that the facility was understaffed." (*Id.*) They further argue that Plaintiffs have not shown a direct impact that any alleged understaffing had on Mr. Rice, how Meadowview failed to comply with staffing requirements, or any actual damage suffered by Mr. Rice. (*Id.* at 12–13.)

11

Plaintiffs respond that they did allege the "who, what, when, where, how, and why of the alleged fraud to satisfy the requirements of Rule 9(b)." (Doc. 12 at 22 (internal citations omitted).) They say that Adrienne Woods, a representative of Defendants, "concealed material facts from Mr. Rice regarding the staffing levels at the facility" during the admission process to Meadowview, through "verbal and written representation[,]" to induce Mr. Rice to become a resident. (*Id.* at n.42–47.) Further, they argue that they have sufficiently alleged a monetary loss due to Defendants' misrepresentation, which satisfies the damage requirement. (*Id.* at 22–23.)

    **ii. Law and Analysis**

Federal Rule of Civil Procedure 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this Rule, "[t]o allege fraud, 'a party must state with particularity the circumstances constituting fraud.' " *United States ex rel. Gage v. Davis S.R. Aviation, L.L.C.*, 623 F. App'x 622, 625 (5th Cir. 2015) (unpublished) (quoting Fed. R. Civ. P. 9(b)). " 'Rule 9(b) requires, at a minimum, that a plaintiff set forth the "who, what, when, where, and how" of the alleged fraud.' " *Id*. at 625 (quoting *United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 266 (5th Cir. 2010)); *see also United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) ("The time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby must be stated . . . in order to satisfy Rule 9(b)." (cleaned up)).

The Court finds that Plaintiffs have sufficiently pled a fraud claim. The *Petition* sets forth the details of the fraud: <u>who</u> ("Adrienne Woods or another facility representative" (Doc. 1-1 at 15)), <u>what</u> (Mr. Rice and his legal representative "relied upon [Defendants'] representations as to their promised compliance [with La. R.S. 40:2010.8(A)] in deciding to become a resident of the

12

facility, and signed an admission agreement and became a resident of the facility" (*Id.* at 15–16)), when ("before, during, and after the admission process . . . [Defendants] actively and intentionally concealed from Mr. Rice that at all times relevant hereto the facility did not employ sufficient 'nursing service personnel' to meet the needs of facility residents as mandated by law" (*Id.* at 16)), where (Meadowbrook nursing home (*Id.* at 14)), and how (providing a copy of his rights under the NHRBR and representing that these rights would be honored (*Id.* at 15–16)). Plaintiffs allege that this misrepresentation resulted in pecuniary losses through payment of services not rendered, and that Mr. Rice's injuries—which led to his death—were a result of the understaffing at Meadowview. (*Id.* at 22–23.) The Court therefore finds that Plaintiffs have met the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b), and the *Motion to Dismiss* will be denied on this ground.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *12(b)(6) Motion to Dismiss* (Doc. 4) filed by defendants Nexion Health Management, Inc. and Nexion Health at Minden, Inc. d/b/a Meadowview Health & Rehab Center is **DENIED.**

Signed in Baton Rouge, Louisiana, on February 26, 2025.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**